FENTON GRAVEL CO., INC., *v.* VILLAGE OF FENTON.

1. MUNICIPAL CORPORATIONS—USE OF STREETS—GRAVEL TRUCKS—CONSTRUCTION OF ORDINANCES.

   Village ordinance which permits use of plaintiffs' heavy gravel-hauling equipment on certain streets but not those in residential area with unpaved or nonpermanent surfaces nearest the pit, located outside of the village, is construed as regulation not prohibition, and not unreasonable (Const 1908, art 8, § 28; CLS 1956, §§ 257.605, 257.606, 257.722, 257.726).

2. SAME—VILLAGES—REASONABLE CONTROL OF STREETS.

   A village is accorded the reasonable control of its highways by the Constitution and statute (Const 1908, art 8, § 28; CLS 1956, §§ 257.605, 257.606, 257.726).

3. SAME—VILLAGES—CONTROL OF STREETS—STATUTES—ORDINANCES.

   The statutory requirement that there be uniformity in application of the vehicle code and prohibiting local authorities from enacting or enforcing ordinances, a rule, or regulation in conflict with the code does not prevent a village from restricting use of local highways in its exercise of the police power and the general grant of power of reasonable control to municipalities contained in the Constitution (Const 1908, art 8, § 28; CLS 1956, §§ 257.605, 257.606, 257.726).

4. AUTOMOBILES—STATUTES—LOWER WEIGHT LIMITS FOR LOCAL STREETS.

   The statutory provision fixing maximum weight limits for vehicles does not prohibit reasonable weight classification for local streets less than normal maximal limits (CLS 1956, § 257.722).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 3] 25 Am Jur, Highways §§ 255, 260–269.
[4] 25 Am Jur, Highways § 269.
   Power to limit weight of vehicle or its load with respect to use of streets or highways. 75 ALR2d 376.

Appeal from Genesee; McGregor (Louis D.), J.
Submitted January 8, 1963. (Calendar No. 2,
Docket No. 49,822.) Decided October 10, 1963.

Bill by Fenton Gravel Co., Inc., a Michigan corpo-
ration, James B. Barkman, and Construction Serv-
ice, Inc., a Michigan corporation, against the Village
of Fenton, a municipal corporation, and Harry
Lemen, village council president, to declare void and
enjoin enforcement of an ordinance regulating heavy
truck traffic and designating routes on village streets.
Bill dismissed. Plaintiffs appeal. Affirmed.

*Sullivan, Elmer, Eames & Moody (William B.
Elmer* and *David L. Nelson,* of counsel), for plain-
tiffs.

*Albert H. Callahan,* for defendants.

SMITH, J.

### *Parties to the action.*

Plaintiff, Fenton Gravel Company, operates a
large sand and gravel pit in Livingston county, ap-
proximately 1/2 mile south of the village limits of
Fenton which, itself, is at the southern edge of
Genesee county. Other plaintiffs are Barkman and
Construction Service, Inc., who operate motor car-
riers transporting sand, gravel, and similar com-
modities from the pit. Defendants are the village
of Fenton and Harry Lemen, president of the village
council.

### *Statement of the case.*

Plaintiffs attack the validity of a village ordinance
regulating, mainly, truck and trailer traffic, upon

streets, within and through the village.* Prior to adoption of the ordinance, in January, 1961, vehicles of the motor carriers entered Fenton by way of a street at its southern limits, proceeding, on almost a direct line, to the northern limits of the village, and, then, on to the principal market, Flint. The route was through a residential area at the southern end of the village, over streets of various composition, then on the main street of Fenton, through the principal business district north to village limits.

Under the new ordinance, 3 truck routes are established. Over 2 of these routes ("A" and "B"), large tractor and trailer combinations may travel, but the streets in the southern end of the village are principally in a 3d classification ("C"), over which heavier, so-called "double-bottom" equipment is not permitted. Approximately 75% of the gravel pit's production is transported in such heavy equipment. However, vehicles could be driven over 2 Livingston county roads westerly to the new US-23 expressway, thence northerly to an intersecting State trunk line highway which enters the village at its western limits; such vehicles could then follow a course from the western limits east to the center of the village, thence northerly out of the village to Flint. This route is old US-23, used before completion of the new expressway. The expressway route would add 5.7 miles to the trip from pit to Flint and increase transportation costs 28¢ per ton. It is claimed that this would price Fenton Gravel out of the Flint market with serious consequences to all plaintiffs. Plaintiffs seek a permanent injunction. The trial judge upheld the ordinance and dismissed the bill of complaint. Plaintiffs appeal.

---

* Village of Fenton, Ordinance No 159.

DECISION.

## A. *Regulation or prohibition?*

Appellants' principal arguments are grounded upon the proposition that the ordinance prohibits large vehicles from using village streets. In view of this proposition, they claim the ordinance is in violation of the State Constitution and statute law. As seen from the facts, this proposition is untenable. Heavy motor vehicle equipment may actually enter the village by way of old US-23, and proceed thereon through the village under provisions of the ordinance in question. Appellants contend that they should be permitted to enter the village in the southern part which is nearest the pit. This, however, is not required. If it were otherwise, then a gravel operation might be launched on either side of the village, with corresponding necessity to permit entrance at the nearest point, despite neighborhood and road conditions in that particular area. Without intending to judge whether prohibition of street use would be valid or invalid, under circumstances in this case, we conclude that because other routes are established by the ordinance which accommodate plaintiff carriers' heaviest equipment, this constitutes regulation not prohibition.

The essential question is whether the ordinance violates either constitutional or statutory requisites. Article 8, § 28, of the Michigan Constitution of 1908, reads in part as follows:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

Language interpreting "reasonable control" is contained in the leading case of *People* v. *McGraw,* 184 Mich 233, cited by both parties. After discussing the

history of the section, Justice KUHN wrote as follows (p 238):

"In other words, the municipality retains *reasonable control* of its highways, which is such control as cannot be said to be unreasonable and inconsistent with regulations which have been established, or may be established, by the State itself with reference thereto. This construction *allows a municipality to recognize local and peculiar conditions and to pass ordinances regulating traffic on its streets, which do not contravene the State laws.*" (Emphasis supplied.)

Significantly, it was held in that case that a State statute which attempted to take from a municipality all control of its streets, insofar as motor vehicles are concerned, was in violation of the quoted section of the Constitution.

## B. *The uniformity requirement.*

The legislature has implemented the Constitution with certain statutes. Statutory provisions pertinent to this discussion are quoted herewith:

"Sec. 605. The provisions of this chapter shall be applicable and *uniform* throughout this State and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any ordinance, rule or regulation in conflict with the provisions of this chapter.

"Sec. 606. (a) The provisions of this chapter *shall not be deemed to prevent local authorities* with respect to streets and highways under their jurisdiction and *within the reasonable exercise of the police power* from: * * * .

"7. Restricting the use of highways as authorized in section 726 of this chapter." CLS 1956, §§ 257.605, 257.606 (Stat Ann 1960 Rev §§ 9.2305, 9.2306). (Emphasis supplied.)

Said section 726 reads as follows:

"Local authorities and county road commissions with respect to highways under their jurisdiction, except State trunk line highways, *may by ordinance or resolution, prohibit the operation of trucks or other commercial vehicles, or may impose limitations as to the weight* thereof on designated highways, which prohibitions and limitations shall be designated by appropriate signs placed on such highways."    CLS 1956, § 257.726 (Stat Ann 1960 Rev § 9.2426).    (Emphasis supplied.)

Thus, while there is a requirement of uniformity, as appellants argue, it is not required, as they seem to contend, that every local ordinance be similar to every other, or that each ordinance be but a copy of the statute.    The requirement of uniformity is this: that statutes herein involved be applied uniformly in all political subdivisions of the State.    This uniformity is explained, basically, in the language of the statute that, "no local authority shall enact or enforce any ordinance, rule or regulation in conflict with," applicable statutory provisions.    In further delineation of the uniformity requirement is a specific authorization to "local authorities", in the reasonable exercise of police power, to restrict use of local highways.    Obviously, this is no more than legislative implementation of the general grant of power to municipalities in the State Constitution, that is, reasonable control.

Relative to this point, although appellants concede that routes "A" and "B", established in the ordinance, are in essential conformity with the statute, CLS 1956, § 257.722 (Stat Ann 1960 Rev § 9.2422), they contend, however, that since they find no provision for a third classification such as contained in the route "C" section established by the ordinance, then this violates the uniformity requirement.    In sup-

port of this argument, appellants cite *City of Dearborn* v. *Sugden & Sivier, Inc.*, 343 Mich 257. Defendant was convicted of violating a city of Dearborn ordinance restricting weight of motor vehicles on a State trunk line highway. Dearborn argued that the reasonable control provision of the Constitution permitted it so to regulate on State trunk lines in the city limits. Defendant along with intervenors, argued that the statute permitting local authorities to regulate highways, except State trunk lines, did not permit Dearborn to impose weight restrictions on the State trunk line highway in the city. We held the Dearborn ordinance was valid and declared that insofar as the statute sought to prevent municipalities from adopting weight regulations for commercial vehicles on local streets, it was constitutionally invalid. The *Dearborn Case* is of little help to plaintiffs because therein the fundamental issue involved a determination of the authority of a city to adopt and enforce a local ordinance regulating truck weights on a State trunk line within the city. Herein, we are primarily concerned with regulation of truck traffic on village streets not part of the State trunk line system.

A plain reading of section 722, which specifies permissible axle loadings, makes it clear that weight restrictions therein imposed govern maximum weights only. The section does not purport to prescribe specific weights for all such vehicles on all streets. This is evident from the following:

"Sec. 722 (a) In no case shall the *maximum* axle load exceed the number of pounds designated in the following provisions which prescribe the distance between axles: * * *

"4. The foregoing shall be known as the normal loading *maximum*." (Referring to axle weights stated in preceding sections.)

It seems clear, therefore, that under ordinary conditions weight restrictions imposed under section 722 are maximal. Highly significant, of course, is the absence of language in the section from which it may. be reasonably construed that the legislature intended statutory weight restrictions to be other than "normal maximum limits." Specific categories are not required under the statute, nor does the statute prohibit reasonable weight classification for local streets less than normal maximal limits. There is no warrant, therefore, for appellants' argument that uniformity requirements of the statute have not been met.

## C. *Is the ordinance reasonable?*

Evidence answers the query definitely in the affirmative. The ordinance grew out of conditions created by the opening of the gravel pit in 1960 and the hauling of material from it in heavily loaded truck and tractor combinations. Testimony showed the character of the southern end of the village to be residential. The carriers created substantial problems of noise and dust. One street over which vehicles passed was of dirt surface, 22 feet wide, without curb or gutter. Another street was paved with "prime and double seal", a nonpermanent surface; it was 20 feet wide. It was shown that some of the vehicles constantly spilled sand. Additionally, testimony showed that heavy truck traffic tends to shorten the life of a road.

In view of the above described conditions existing in the southern part of the village, the council adopted, as part of the comprehensive ordinance, what is termed a class "C" truck traffic route. Thereunder, maximal limits for axle weights are reduced comparatively. The effect is to limit truck traffic through the southern end of the village to lighter vehicles. Heavier vehicles, as already mentioned,

may enter the village on the State trunk line highway, which highway is adequate to carry such vehicles. We conclude that the challenged ordinance is not unreasonable. In the words of the *McGraw Case, supra,* it recognizes "local and peculiar conditions"; it meets these conditions in a comprehensive ordinance reasonable in application to the facts and circumstances. See *McCammon* v. *City of Redwood City,* 149 Cal App 2d 421 (308 P2d 831). Also in general accord with this holding are numerous cases cited under the annotation entitled "Highways—Weight Limitations", 75 ALR2d 376. We do not deem it necessary to discuss other questions presented by appellants.

Affirmed. Costs to appellees.

Carr, C. J., and Kelly, Kavanagh, Souris, and O'Hara, JJ., concurred with Smith, J.

Dethmers, J., concurred in result.

Black, J. *(concurring).* I concur in affirmance. Fully adequate reasons appear in Justice Smith's opinion under heading "Is the ordinance reasonable?". Once the courts have answered such question in the affirmative, and this Court does by final decision this day, the Constitution takes over and there is no occasion for consideration of legislative action.

In the last analysis the judiciary, not the legislature, determines when called upon whether a local ordinance is "reasonable" within Const 1908, art 8, § 28. I concede that this view might by some be deemed as being at variance with certain language appearing in the *McGraw Case (People* v. *McGraw,* 184 Mich 233, 238) and subsequent quotations thereof. But the veriest hint, that the "reasonable control" section 28 reserves to local units, must be

consistent with or determined by present or future statute is something this Court should definitely eliminate. This is particularly true considering upcoming and corresponding section 29 of article 7 of the Constitution of 1963. The concluding sentence of said section 29 reads much the same as the concluding sentence of said section 28, save only for its qualifying words "Except as otherwise provided in this Constitution."

For convenient comparison, present section 28 and new section 29 are arrayed below:

"Sec. 28. No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships." Const 1908, art 8, § 28.

"Sec. 29. No person, partnership, association or corporation, public or private, operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any county, township, city or village for wires, poles, pipes, tracks, conduits or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village; or to transact local business therein without first obtaining a franchise from the township, city or village. Except as otherwise provided in this Constitution the right of all counties, townships, cities and villages to the reasonable control of their highways, streets, alleys and public places is hereby reserved to such local units of government." Const 1963, art 7, § 29.

My vote to affirm is cast according to foregoing convictions of supremacy of Constitution over stat- ute. Any other rule would permit control by statute of the application of this constitutionally reserved local right. The Constitution grants no such power to the legislature.